UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WILLIAM BAHAM                                              CIVIL ACTION

VERSUS                                                          NO. 19-2157

DARREL VANNOY                                          SECTION "H" (2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1] For the following reasons, I recommend that the petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.  FACTUAL BACKGROUND

Petitioner William Baham is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Baham was charged by a bill of indictment in Orleans Parish with second degree murder of Errol Meeks.[3] Baham pled not guilty on May 24, 2011.[4] The Louisiana Fourth Circuit Court of Appeal summarized the established facts at trial as follows:

> On the night of January 17, 2011, Meeks was at Friar Tucks bar with Larry
> Brown, a relative. Donald Oliver (nicknamed "Diesel"), who knew Meeks through

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id.* § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id.* § 2254(e)(2)(B).

[2] ECF No. 1, at 1.

[3] State Record Volume (hereinafter "St. R. Vol.") 3 of 6, Bill of Indictment, 1/17/11.

[4] St. R. Vol. 1 of 6, Min. Entry, 5/24/11.

a friend, was also at the bar.  Defendant and two acquaintances, Derrick Lotz (nicknamed "Pops") and Mitchell Marks were among the other patrons at Friar Tucks that night.

Darnell Lawrence, a bouncer at Friar Tucks, was on duty the night of January 17, 2011.  During the evening, defendant and Oliver were involved in a fight in the bar's men's room.  Upon learning of the fight, Lawrence broke it up and returned to his position at the door.  After the incident, Oliver left the bar.  Defendant and his friends also left.  However, defendant left to retrieve his gun because "[h]e was mad and he wanted to smash" Oliver.  Derrick Lotz, Marks, and Robert Lotz (nicknamed "Rough" or "Ruffy") "tr[ied] to talk [defendant] out of it," but they eventually drove back to Friar Tucks in Derrick Lotz's white Chevrolet Monte Carlo. Derrick Lotz (the driver) and defendant (the front passenger) exited the vehicle and approached the bar.

Lawrence, who was still stationed at the door, saw Meeks leave the bar.  Defendant walked into the bar for a few seconds, abruptly turned around and walked out, following Meeks and trailed by Derrick Lotz.  A few seconds later, as Marks and Robert Lotz were exiting Robert Lotz's vehicle, multiple gunshots rang out, and Meeks fell to the ground.  Marks and Robert Lotz immediately got back in their vehicle, and defendant ran from the bar and "jumped in the truck" with them.  Defendant had a gun, "silver with a black handle" and "[b]etween a 9 and a 40" caliber, in his hand.  Robert Lotz drove them to defendant's grandmother's house, and defendant's grandmother then drove defendant across the river.

New Orleans Police Department (NOPD) Officer Robert Ponson arrived on the scene outside Friar Tucks shortly after 11:00 p.m., and a Friar Tucks employee handed him several cartridge casings that were fired from of a 40–caliber handgun.  Lawrence approached NOPD Detective Kevin Williams, an investigator on the scene, and identified the shooter as a man named "Will" who frequented Friar Tucks once or twice a week.  Detective Williams relayed the identification information to NOPD Detective Robert Hurst, the lead detective on the case.  Lawrence also identified Derrick Lotz as the man standing behind defendant at the time of the shooting in the video of the incident recorded by the bar surveillance system.

The following day, Detective Hurst interviewed Derrick Lotz about the shooting.  Derrick Lotz confirmed that he was standing on the bar's porch behind defendant when defendant shot Meeks.  He identified defendant as the shooter and picked him out of a photographic lineup.

NOPD Detective Maggie Darling visited Marks in prison on May 19, 2011, to interview him about the shooting.  Marks gave Detective Darling a detailed statement of the incident, which was audio-recorded.  Marks confirmed that defendant was involved in an altercation in the bar bathroom with another patron who pushed defendant's head in the toilet.  According to Marks, defendant had a

swollen face, was very mad, and told him that he wanted to get his gun "to smash that dude." Marks then left the bar with defendant and accompanied him to his grandmother's house, where defendant retrieved his gun. Marks continued:

> [A]fter that we went—we would go and we were trying to talk him out of it. He was on his way there.... We got by Ruffy's house. Me and Ruffy was [sic] in a car and him and Pops was [sic] in the truck. I mean the car and they went around there. Me and Ruffy was [sic] about to go inside. As we get [sic] out of the truck we just heard gunshots. Everybody got scared. We got back in the truck. He ran our way. He jumped in the truck with us.

Marks described the gun as between a nine or a forty caliber and silver with a black handle. After he gave his statement, Marks placed a call from prison that same day to his girlfriend and told her that he was going to play dumb at trial.

On November 4, 2011, both defendant and Gregory L. Pelfrey, another Orleans Parish Prison inmate, had hearings scheduled in Orleans Parish Criminal District Court, Section L. Consequently, they, along with three other inmates, were held in the same holding cell, or dock, just outside the courtroom while they awaited their respective hearings. Defendant and Pelfrey had never met each other before that day, and did not see each other again until the day of defendant's trial.

While waiting in the Section L dock, defendant admitted to the murder, announcing to the other inmates that the police had no evidence against him because he threw his gun into the river. He also told the other inmates that one of the key witnesses in his case was an acquaintance who was not going to show up for trial. Defendant told the inmates that his attorney was John Fuller. Around noon, Mr. Fuller came into the docks. At that point, defendant and Mr. Fuller moved toward the toilet, and defendant handed Mr. Fuller a document. Defendant then came back to the other inmates and said that his next court date was on December 15, 2011. After returning to his prison cell, Pelfrey filled out a grievance form, declaring what he had heard from defendant, and passed it to a deputy. From that point until the trial, Pelfrey had no contact with law enforcement about defendant's case.

On a phone call from the prison around 2:00 p.m., on November 4, 2011, defendant stated that he had given something to Mr. Fuller, his attorney, earlier that day. Additionally, defendant stated that his next court date was December 15, 2011.[5]

---

[5] *State v. Baham*, 151 So. 3d 698, 699-701 (La. App. 4th Cir. 2014); St. R. Vol. 1 of 6, Louisiana Fourth Circuit Court of Appeal Opinion, 2013-KA-0058, at 1-4, October 1, 2014.

Baham went to trial before a jury on July 16 through 18, 2012. The jury unanimously found Baham guilty as charged.[6] Baham filed a Motion for New Trial and for Post-Verdict Judgment of Acquittal.[7] On August 16, 2012, the state trial court denied Baham's Motion for New Trial and Post-Verdict Judgment of Acquittal.[8] After Baham waived legal delays, the court sentenced him to life imprisonment without the benefit of parole, probation or suspension of sentence.[9]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Baham's appointed counsel asserted two errors:

(1)    His right to a fair trial was substantially affected by the prosecutor's improper remarks and questions attacking defense counsel; and

(2)    His right to a fair trial was violated when the trial court allowed the jury to take the transcript of Marks' statement into the jury room during deliberations.[10]

On October 1, 2014, the Louisiana Fourth Circuit affirmed Baham's conviction and sentence.[11] The court found that Baham had not shown prejudice as a result of the prosecutor's statements because (1) the objectionable comments were not pervasive; (2) the defense objections were sustained; (3) the trial court instructed the jury that defense counsel did nothing wrong; and (4) there was substantial evidence of Baham's guilt such that the verdict was not attributable to the prosecutor's statements.[12] The court found that the trial court erred in allowing the jury to review the transcript of Marks' statement in the jury room, but found the error was harmless given the

---

[6] St. R. Vol. 1 of 6, 7/16/12 Trial Mins. (2 pages); 7/17/12 Trial Mins. (1 page); 7/18/12 Trial Mins. (2 pages); St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr.
[7] St. R. Vol. 1 of 6, 8/16/12 Motion for New Trial and For Post-Verdict Judgment of Acquittal;
[8] *Id.*, 8/16/12 Sentencing Mins.
[9] St. R. Vol. 1 of 6, 8/16/12 Sentencing Mins.; St. R. Vol. 4 of 6, 8/16/12 Sentencing Tr.
[10] St. R. Vol. 4 of 6, Appeal Brief, 2013-KA-0058, at 2, 3/5/14.
[11] *State v. Baham*, 151 So. 3d 698, 704, 706 (La. Ct. App. 4th Cir. 2014); St. R. Vol. 1 of 6, 4th Cir. Opinion, 2013-KA-0058, at 10, 13, 10/1/14.
[12] 151 So. 3d at 702-04.

extensive evidence of Baham's guilt and neither contributed to the verdict nor deprived Baham of a fair trial.[13]

On September 18, 2015, without stated reasons, the Louisiana Supreme Court denied the pro se writ application filed by Baham.[14]  On October 30, 2015, the Louisiana Supreme Court denied Baham's application for rehearing.[15]  Baham did not file an application for writ of certiorari with the United States Supreme Court within ninety (90) days, thus, this conviction and sentence became final on January 2, 2016.[16]

On February 18, 2016, Baham filed an application for post-conviction relief asserting eight claims:

(1)    Felonious prosecution due to the use of a bill of information to charge him with second degree murder;

(2)    Prosecutorial misconduct and fraud upon the court based on the prosecution improperly introducing hearsay testimony, perjured testimony, withholding *Brady*[17] evidence and vouching for witness credibility;

(3)    The trial court abused its discretion by failing to sequester the jury, depriving Baham of a fair trial by interfering without providing the defense an opportunity to confront his accuser under the confrontation clause, forcing a witness by threat to testify, and improperly ruling on inadmissible perjury testimony;

(4)    His right to confrontation was violated;

(5)    Insufficient evidence supported the identification of Baham as the perpetrator;

---

[13] *Id.* at 704-05.

[14] *State v. Baham*, 178 So. 3d 138 (La. 2015); St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2014-KO-2176, 9/18/15; ECF No. 1-4, at 3-25 (undated).

[15] *State v. Baham*, 179 So. 3d 613 (La. 2015); St. R. Vol. 6 of 6, Request for Rehearing of Constitutional Merits, 10/7/15 (dated 9/28/15).

[16] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A); *Wilson v. Cain,* 564 F.3d 702, 707 (5th Cir. 2009) (motion for reconsideration must be considered in determining finality of conviction); SUP. CT. R. 13(1).

[17] *Brady v. Maryland*, 373 U.S. 83 (1963) (due process requires the prosecution to disclose exculpatory evidence within its possession).

(6)     Gunshot residue and DNA testing would exonerate him;

(7)     Ineffective assistance of trial counsel for failing to file a motion to quash, failing to investigate, and pleading Baham guilty before the jury; and

(8)     Ineffective assistance of appellate counsel in failing to raise insufficiency of the evidence and other issues on appeal.[18]

On September 12, 2016, the state trial court denied the application finding that Baham's first claim lacked merit as he was charged by a bill of indictment.[19]  The court also found meritless Baham's claims of prosecutorial misconduct, explaining that Baham failed to present any evidence that any testimony was false or that the prosecution knew or should have known the testimony was false and that he failed to provide any evidence supporting a claim that the prosecution withheld exculpatory *Brady* evidence.[20]  The court found that Baham's third claim did not raise a violation of any state or federal constitutional right.[21]  As to his claim alleging he was denied the right to confront his accusers, the trial court found Baham was offered an opportunity to cross-examine every witness called by the State and had the opportunity to subpoena his own witnesses.[22]  The trial court denied Baham's claim relating to misidentification, finding the evidence and arguments were presented to the jury who determined credibility and found him guilty.[23]  Baham's claim relating to sequestration was found to lack merit as there was no requirement that the jury be sequestered and the court did not believe there was any reason to sequester the jury.[24]  The trial court found Baham's sixth claim relating to Marks' statement was previously addressed by the

---

[18] St. R. Vol. 1 of 6, Application for Post-Conviction Relief, 2/22/16 (dated 2/18/16).
[19] St. R. Vol. 1 of 6, Ruling at 1, 9/12/16.
[20] *Id*. at 1-2.
[21] *Id*. at 2.
[22] *Id*.
[23] *Id*.
[24] *Id*.

Louisiana Fourth Circuit.[25]  The trial court found that Baham failed to demonstrate his counsel's performance was deficient or resulted in prejudice with regard to his long list of ineffective assistance of counsel claims.[26]  Finally, the trial court found that Baham failed to show prejudice as a result of his appellate counsel's failure to raise sufficiency of evidence on appeal, and there was no evidence that appellate counsel missed any errors that should have been raised.[27]

On December 16, 2016, the Louisiana Fourth Circuit denied Baham's October 25, 2016, writ application.[28]  The Louisiana Supreme Court denied Baham's related writ application on August 31, 2018, finding that he failed to show that the State withheld material exculpatory evidence in violation of *Brady*, and that, as to his remaining claims, he failed to satisfy his post-conviction burden of proof under LA. CODE CRIM. PROC art. 930.2.[29]

## II.    FEDERAL HABEAS PETITION

On March 6, 2019, Baham filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[30]  Broadly construing his *pro se* pleadings, Baham asserts the following claims before the court:

(1)    The prosecution committed fraud upon the court by introducing improper hearsay and perjured testimony, withholding *Brady* evidence, and vouching for witness credibility;

(2)    He was denied his right to confront his accuser;

(3)    The trial court denied him his rights to due process and a fair trial by failing to sequester the jury, allowing the State to direct the jury's verdict by fraud,

---

[25] *Id*. at 2-3.

[26] *Id*. at 3-4

[27] *Id.* at 4.

[28] St. R. Vol. 5 of 6, 4th Cir. Order, 2016-K-1115, 12/16/16; *id*., 4th Cir. Writ Application, 2016-K-1115, 10/25/16.

[29] *State ex rel. Baham v. State*, 251 So. 3d 1069 (La. 2018); St. Rec. Vol. 6 of 6, La. Sup. Ct. Order, 17-KH-0207, 8/31/18; ECF No. 1-6, at 20-41*,* La. Sup. Ct. Writ Application, St. Rec. Vol. 2 of 6, Supreme Court letter confirming receipt of writ application dated 1/13/17.

[30] ECF No. 1.

withholding *Brady* evidence, and interfering with Baham's right to present a defense;

(4)      Ineffective assistance of counsel;

(5)      Prosecutorial misconduct; and

(6)      He was denied his right to due process when the trial court allowed the jury to have a copy of the transcript of Marks' statement in the jury room during deliberations.[31]

The State's response in opposition conceded timeliness and exhaustion.[32]  The State asserts that Baham's claims are meritless and the denial of relief was not contrary to or an unreasonable application of Supreme Court law.[33]  Baham filed a reply to the State's opposition response re-urging the merits of some, but not all, of his claims.[34]

## III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[35] and applies to habeas petitions filed after that date.[36]  The AEDPA therefore applies to Baham's petition filed on March 6, 2019.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court.  In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural

---

[31] ECF No. 1-2, at 8, 24.  Baham utilizes the same numbering scheme he used in his direct appeal and application for post-conviction relief.  Specifically, he refers to issues two, four, six, and seven from his application for post-conviction relief and issues one and two from his direct appeal.  *See id.*  For ease of reference, I use a sequential numbering scheme.

[32] ECF No. 21.

[33] *Id.*

[34] ECF No. 23.

[35] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[36] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

default" on a claim.[37]  Here, the State concedes, and the record shows, that Baham's federal habeas petition is timely, state court review has been exhausted, and no claim is in procedural default.[38]

This federal habeas court is thus not barred from reviewing Baham's claims.  Nevertheless, for the reasons that follow, Baham is not entitled to federal habeas relief.

### A. <u>Standards of a Merits Review</u>

Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[39] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[40]  The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).  The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[41]  The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of

---

[37] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).
[38] ECF No. 21.
[39] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).
[40] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).
[41] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[42]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[43] "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[44]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[45] Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[46] The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[47]

---

[42] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry*, 532 U.S. at 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[43] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[44] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

[45] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

[46] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[47] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

B. **AEDPA Standards of Review Apply in this Case**

As discussed above, the AEDPA's deferential standards of review under § 2254(d) and *Williams*[48] apply only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). Thus, the deferential AEDPA standards of review do not apply to claims that are not adjudicated on the merits in state court.[49] In that instance, the federal habeas court will consider the claims (not addressed on the merits) under pre-AEDPA *de novo* standards of review.[50]

To determine whether to apply the highly deferential AEDPA standards, a federal habeas court must look to the last reasoned state court decision to determine whether that ruling was on the merits of the claim and "lack[ed] in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[51] In well-settled Supreme Court doctrine, when faced with an unexplained state court decision, the federal habeas court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision.[52]

---

[48] 529 U.S. at 362.

[49] *Cullen v. Pinholster,* 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).

[50] *Henderson*, 333 F.3d at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims asserted in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

[51] *White*, 572 U.S. at 419-20 (quoting *Harrington*, 562 U.S. at 103).

[52] *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

IV.    **BAHAM'S SPECIFIC CLAIMS**

A.   **Claim One: Prosecutorial Misconduct/Fraud upon the Court[53]**

Baham claims that the prosecution committed "fraud upon the court" by introducing hearsay and  perjured testimony, withholding *Brady* evidence, and vouching for its witnesses' credibility.  While it is difficult to decipher his rambling, disorganized arguments, it appears that Baham claims that Detectives Ponson, Williams and Hurst as well as Darnell Lawrence gave hearsay testimony.[54]  He appears to further claim that Detectives Williams and Hurst, Mitchell Marks, Darnell Lawrence, Damon Harris, and Donald Oliver testified falsely.[55]  He also claims that the prosecution withheld the names of witnesses who were interviewed at the crime scene.[56]  Finally, he mentions that the prosecution vouched for its witnesses' credibility.[57]

The trial court, in addressing these issues, among others, on post-conviction relief, found as follows:

> Defendant's second claim alleges that his conviction is based upon prosecutorial misconduct.  More specifically alleged is that the State knowingly allowed fraudulent testimony to be presented to the jury as well as hearsay that should have been excluded.  The defendant provides nothing in support of his claim that any testimony was false or that the prosecutor knew or should have known that any testimony presented was false. Defendant argues that the testimony presented did not match any information contained in the video.  However, the jury was presented with the testimony and video evidence.  The jury, as the fact finder, believed that the defendant was the shooter.  This Court is not in a position to second guess the fact finder post-verdict.  Nor does this Court find that inappropriate evidence, in any form, was allowed to be presented to the jury in violation of defendant's constitutional rights.
>
> In addition, this case, on appellate review, was reviewed not only for issues presented but for any errors patent review.  None were found.  *State v. Baham*, 151 So. 3d 698, 701 (La. App. 4 Cir. 2014).

---

[53] Baham refers to this issue in his habeas memorandum as "ISSUE TWO".  ECF No. 1-2, at 8.
[54] *Id*. at 9-10.
[55] *Id*. at 10-16.
[56] *Id.*
[57] *Id*. at 8, 16-17.

> Defendant presents many arguments which would be more properly used in a closing argument. They are just that, this theories of why testimony and/or evidence may or may not have been presented to the jury by the State. In addition, the fact that the defense did not call witnesses that the defendant believes should have been called, including himself, does not warrant a reversal of conviction and new trial. This Court does not now second guess defense counsel's reasons and strategy.

> Defendant further claims that a statement providing an alternate description of the shooter was improperly withheld by the State in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). No evidence has been presented in support of this claim. Additionally, this alternate description was provided to the defense and presented to the jury for consideration during trial. (Trial Transcript pp. 79-80). Therefore, defendant failed to provide supporting evidence of withheld exculpatory information and this *Brady* claim is denied. Defendant's prosecutorial misconduct allegation for failure to turn over the alleged *Brady* evidence is therefore also denied.[58]

The Louisiana Supreme Court denied the related writ application finding that Baham failed to show that the State withheld material exculpatory evidence in violation of *Brady*, and that, as to the other claims, he failed to satisfy his post-conviction burden of proof under La. Code Crim. Proc. art. 930.2.[59]

Federal courts apply "a two-step analysis to charges of prosecutorial misconduct."[60] A court first decides whether the prosecutor's actions were improper and, if so, the court then determines whether the actions "prejudiced the defendant's substantive rights."[61] Under the second step, the Supreme Court explained that prosecutorial misconduct violates the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a

---

[58] St. R. Vol. 1 of 6, Ruling at 1-2, 9/12/16.

[59] *State ex rel. Baham*, 251 So. 3d at 1069; St. Rec. Vol. 6 of 6, La. Sup. Ct. Order, 17-KH-0207, 8/31/18.

[60] *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002).

[61] *Id.*

denial of due process.'"[62]   "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'"[63]

### 1. Hearsay Testimony[64]

Baham claims that the prosecution committed fraud by introducing improper hearsay testimony, pointing to Detective Robert Ponson's testimony regarding collecting shell casings from Kaitlyn Walsh and Detective Williams' testimony related to his discussion with Darnell Lawrence.[65]  Baham also cites the testimony of Detective Robert Hurst who he claims testified that Robert Lotz provided Baham's name. [66]

Although "hearsay rules and the Confrontation Clause are generally designed to protect similar values," the United States Supreme Court has been "careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements."[67] Hearsay is defined by LA. CODE EVID. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."  Hearsay is generally inadmissible at trial.[68]

To obtain relief, the petitioner must show that the state trial court's error in allowing hearsay testimony, if any, had a "substantial and injurious effect or influence in determining the jury's verdict."[69]  The petitioner must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in

---

[62] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).
[63] *Parker*, 567 U.S. at 48 (quoting *Yarborough*, 541 U.S. at 664).
[64] Baham does not appear to raise a Confrontation Clause issue with regard to this claim.
[65] *Id*. at 9.
[66] *Id*. at 10.
[67] *Idaho v. Wright*, 497 U.S. 805, 814 (1990) (citations omitted).
[68] LA. CODE EVID. art. 802.
[69] *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

determining the verdict."[70]  In determining harm based on inadmissible testimony, the court should consider (1) the importance of the witness' testimony; (2) whether the testimony was cumulative, corroborated, or contradicted; and (3) the overall strength of the prosecution's case.[71]

Initially, when Detective Ponson, one of the initial responding officers, started to testify as to what Kaitlyn Walsh told him, defense counsel objected and the objection was sustained.[72] Detective Ponson testified that Walsh provided him with shell casings wrapped in a towel that she had picked from the scene.[73]  Detective Ponson testified that Walsh did not give him the name of the shooter or any description.[74]  Detective Ponson simply did not provide hearsay testimony.

Detective Kevin Williams testified on both direct and cross-examinations that Darnell Williams, the security guard at the bar, provided the name of the shooter as "Will."[75]  "Under the Louisiana Rules of Evidence, an investigating officer may be permitted to refer to statements made to him by other persons involved in the case without it constituting hearsay if it explains his own actions during the course of an investigation and the steps leading to the defendant's arrest."[76] Furthermore, even if Williams' testimony constituted hearsay, it does not constitute a constitutional violation that would warrant relief.  Darnell Williams himself testified at trial, described the sequence of events, and identified persons depicted on surveillance video, including Baham.[77]  Lawrence confirmed that he spoke to several law enforcement officers and gave them the name Will."[78]  To the extent that Lawrence gave hearsay testimony regarding Derrick Lotz

---

[70] *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir.1996) (emphasis omitted).
[71] *Sherman v. Scott*, 62 F.3d 136, 142 n.6 (5th Cir.1995).
[72] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 24.
[73] *Id*. at 24-25.
[74] *Id*. at 29.
[75] *Id*. at 33-34, 36-37.
[76] *Woodfox v. Cain*, 609 F.3d 774, 814 (5th Cir. 2010).
[77] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 141-150.
[78] *Id*. at 149, 154.

calling a bar employee named "Austin," this testimony was elicited by the defense and not objected to by the prosecution.  Further, given the insignificance of the testimony and the strength of the prosecution's case, Baham is not entitled to relief as to this portion of his claim.

Finally, Baham cites the testimony of Detective Robert Hurst whom he claims testified that Robert Lotz provided Baham's name.  As described in detail in Section B, Detective Hurst did not testify that Robert Lotz identified Baham as the shooter.  Rather, defense counsel objected before Hurst could testify regarding any statement made by Robert Lotz, and the objection was sustained.[79]

For the foregoing reasons, the denial of relief on this issue was not contrary to or an unreasonable application of federal law.  Baham is not entitled to relief on this claim.

### 2.  False Testimony

Baham appears to claim that Detective Robert Hurst, Detective Kevin Williams, Darnell Lawrence, Mitchell Marks, Damon Harris, and Donald Oliver all testified falsely.[80]  Baham alleges that portions of the testimony of each of these witnesses was contradictory of one another, and, therefore, must have been false.[81]

A State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.[82]  To obtain relief, the petitioner must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was

---

[79] *Id.* at 59-60.
[80] *Id.* at 9-15.
[81] *Id.*
[82] *Giglio v. United States*, 405 U.S. 150, 766 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

material.[83]  False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.[84]

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact.[85]  This court must determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.

Again, Detective Kevin Williams testified that he spoke with Darnell Lawrence, and Lawrence told him the name of the shooter was "Will," which name Williams gave to Hurst.[86] Williams testified that he did not know whether someone told Lawrence who shot the victim.[87]

Detective Hurst testified that, upon arriving at the scene, he met with Detective Williams and learned that a possible suspect was identified as an individual known as "Will."[88]  Hurst further testified that Lawrence identified "Will" and "Pops" first to Detective Williams and then to Hurst.[89]  Hurst testified that he himself spoke to Lawrence and clarified that Lawrence was not a witness to the shooting but rather a witness to Baham's entrance into the bar.[90]  Hurst testified that he was able to see the clothing Baham was wearing by viewing the video.[91]  He also testified that he was not able to determine Baham's address during the investigation because the address he had

---

[83] *Duncan v. Cockrell*, 70 F. App'x 741, 744 (5th Cir. 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993).

[84] *Duncan*, 70 F. App'x at 744 (citing *Nobles*, 127 F.3d at 415).

[85] *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing *United States v. Emueqbunam*, 268 F.3d 377, 403-04 (6th Cir. 2001); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997), *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989)); *Thompson*, 161 F.3d at 808.

[86] St. Rec. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 32-34.

[87] *Id*. at 38.

[88] *Id*. at 52, 63-65.

[89] *Id*. at 57.

[90] *Id*. at 67.

[91] *Id.* at 73.

was several years old and he could not determine whether Baham still resided at the address.[92]  As

a result, no search warrant was executed at an address that he could attribute to Baham.[93]

Officer Damon Harris, Baham's uncle, testified that he arrested Baham.[94]  Harris explained

that he learned that there was a warrant for Baham's arrest and that the warrant squad had gone to

Baham's grandmother's home to arrest Baham.[95]  While Harris initially testified that he believed

a search of the house was conducted, Harris admitted that he did not know whether a search of the

grandmother's home occurred.[96]  Harris further admitted that he told the warrant squad to "lay off"

and that he would get Baham to turn himself in.[97]

Donald Oliver, also known as "Diesel" and an acquaintance of the victim, testified that

Oliver got into a fight with Baham in the bathroom of the bar earlier on the night of the murder.[98]

Oliver did not recall seeing either the victim or the bouncer enter the bathroom.[99]  He admitted that

three or four people separated them, but testified that the victim was not one of them.[100]  Oliver

left the bar because he was angry and later learned that the victim had been murdered.[101]

Darnell Lawrence testified that he was working the door of the bar when the victim, who

was a regular at the bar, told him that there was a fight in the bathroom.[102]  Lawrence recalled that

one of Baham's friends attempted to prevent Lawrence from entering the bathroom.[103]  Lawrence

---

[92] *Id.*
[93] *Id.* at 74, 84.
[94] *Id.* at 91-93.
[95] *Id.* at 94, 97.
[96] *Id.* at 96-97.
[97] *Id.*
[98] *Id.* at 133-35, 139.
[99] *Id.* at 135.
[100] *Id.* at 139.
[101] *Id.* at 136.
[102] *Id.* at 142-44.
[103] *Id.* at 144.

claimed that he yanked the door open and found Oliver hanging Baham upside down in the toilet.[104]  Lawrence told them they had to leave.[105]  Later, when Lawrence was back at the door of the bar, he saw the victim leave the bar as Baham re-entered.[106]  Baham stayed in the bar a few moments and then followed the victim out.[107]  A few seconds later, Lawrence heard four gunshots and went outside to find the victim on the ground.[108]  Lawrence identified the victim, Baham, and "Pops" (Derrick Lotz) from a video depicting the shooting.[109]  According to Lawrence, the video showed the victim fall, the shooter run away, and Pops get into his vehicle.[110]

To the extent Baham disagrees with the foregoing witnesses' testimony and contends that it conflicted with other testimony and/or was not corroborated by physical evidence, the mere existence of a conflict in testimony and evidence does not make the evidence false or perjured.[111]  Rather, perjury is the offering of "false testimony concerning a material matter with the *willful intent* to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."[112]  The evidence in this case presents, at most, differing recollections or perceptions that require the jury to assess credibility and appropriate weight to be afforded such evidence, which frequently occurs at trial and which is the jury's exclusive function to resolve.

Mitchell Marks testified that he did not see Baham get into a fight at the bar, but that Baham told him about the fight after they left.[113]  Marks denied that Baham told him he was going get a

---

[104] *Id.*
[105] *Id.* at 144.
[106] *Id*. at 145.
[107] *Id*. at 145.
[108] *Id*. at 146.
[109] *Id*. at 147.
[110] *Id*. at 147.
[111] *See United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004) ("Wall has not established that McDowell's testimony was actually false.  He has merely shown that Ristau's testimony would establish a conflict in the testimony, a far cry from showing that it was 'actually false.'"), *cert. denied*, 544 U.S. 978 (2005).
[112] *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (emphasis added).
[113] St. R. Vol. 6 of 6, 7/16-18/12 Trial Tr. at 181-82.

gun to "smash the dude."[114]   Marks further denied returning to the bar and testified that he never

saw Baham with a gun seconds after the murder.[115]   Marks admitted that he gave a recorded

statement to detectives that contradicted his trial testimony, but claimed he made up the statement

because he was scared that he would be charged with the murder.[116]   The prosecutor read portions

of Marks' statement wherein Marks admitted that Baham's face was swollen and Baham told him

"Diesel" knocked him out and put his head in the toilet.[117]   According to the statement, Marks

stated that Baham said he was going to get his gun and wanted to "smash that dude."[118]   Marks

testified he could not recall making the statement.[119]   Marks further denied making a statement

that, after Baham retrieved a gun from his grandmother's house, he and others tried to talk Baham

out of it.[120]   Marks testified that he did not recall making a statement that, upon returning to the

bar, he heard gunshots and that Baham jumped in the truck with Marks and "Ruffy" and that they

returned to Baham's grandmother's house.[121]   He testified that he made up a description of a gun.[122]

Marks denied telling his girlfriend, while on a telephone call, that he planned on "playing dumb"

at trial.[123]   The prosecution played a recording of the telephone call.[124]

     While Marks' testimony *was* material to the State's case, Baham has failed to prove that

the prosecution directed or procured Baham's alleged perjured testimony.  Further, the State did

not allow his untrue testimony to go uncorrected.  In light of the detailed questioning by the

---

[114] *Id*. at 182.

[115] *Id.* at 182.

[116] *Id.* at 183-186, 191-192, 208.

[117] *Id.* at 188, 190.

[118] *Id.* at 188.

[119] *Id.* at 188, 191.

[120] *Id.* at 189.

[121] *Id.* at 189-190, 192.

[122] *Id*. at 194.

[123] *Id*. at 195.

[124] *Id*. at 202

prosecutor into the statement made by Marks to detectives, there is no showing that the prosecutor knowingly or otherwise intended to promote false or perjured testimony.  On the contrary, the prosecutor placed all of Marks' inconsistent testimony before the jury during questioning and through the introduction of his typed and audio recorded statement.[125]

Based on the record and as found by the state courts, Baham has not established that the witnesses presented false testimony or that the State suborned perjury through such testimony. The denial of relief on this issue was not contrary to or an unreasonable application of federal law. Baham is not entitled to relief on this claim.

### 3.  Failure to Disclose Exculpatory Evidence

Baham also claims that the prosecution withheld exculpatory evidence in violation of *Brady*.[126]  He claims that Detective Hurst testified that he was not in possession of the clothes Baham was wearing at the time of the murder and did not perform gunshot residue or DNA testing.[127]  He references a discrepancy in the clothing descriptions of the murderer and asserts the State "withheld" the name of the person who provided a different description.[128]  He further claims the State redacted from a report the names of witnesses interviewed by law enforcement on the night of the murder.[129]

The State responds that Detective Hurst admitted that no scientific testing was done to connect Baham to the crime.[130]  It further argues that the jury was made aware of the discrepancies in clothing descriptions, that the police reports were redacted for witness safety purposes in

---

[125] *Id*. at 205-06, 209-14.
[126] ECF No. 1-2, at 8, 11, 1516.
[127] *Id*. at 11, 16.
[128] *Id*. at 11.
[129] *Id.* at 11, 15.
[130] ECF No. 21, at 22.

accordance with Louisiana law, and that the trial court did not abuse its discretion in failing to order the State to provide unredacted copies.[131]

The United States Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[132] The duty to disclose this kind of evidence exists even though there has been no request by the defendant.[133]  The prosecution's duty to disclose includes both exculpatory and impeachment evidence.[134] *Brady* claims involve "the discovery, *after trial* of information which had been known to the prosecution but unknown to the defense."[135]  To prove a *Brady* violation, Baham must establish that the evidence is favorable to the accused as exculpatory or impeachment, that the evidence was suppressed by the State, *and that prejudice resulted from the non-disclosure*.[136]

Detective Hurst testified that he included a clothing description of what Baham was wearing in his report.[137]  He agreed that one place in his report he described the clothing as "a brown dicky short sleeve top, matching pants and black long sleeved shirt underneath."[138] However, he also included the description from a witness who was at home looking through his window and reported seeing a black male running from the bar wearing a black hoodie sweatshirt.[139] Hurst explained that they did not have the clothing the shooter was wearing because,

---

[131] *Id*. at 22-24.

[132] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[133] *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)); *Hall v. Thaler*, 504 F. App'x 269, 273 (5th Cir. 2012) (citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

[134] *Strickler*, 527 U.S. at 280 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)); *United States v. Valas*, 822 F.3d 228, 236–37 (5th Cir. 2016).

[135] *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *Agurs*, 427 U.S. at 103) (emphasis added); *accord Reed v. Stephens*, 739 F.3d 753, 783 (5th Cir. 2014).

[136] *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citing *Strickler*, 527 U.S. at 281–82); *Reed*, 739 F.3d at 782.

[137] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 72-73.

[138] *Id*. at 79-80.

[139] *Id*. at 80-81, 89.

at the time of the murder, they did not have a current address for Baham.[140]  He admitted that no

gunshot residue testing was performed because they had nothing to test.[141]

   While Baham contends that law enforcement took clothing from his grandmother's house

and that it was admitted into evidence after trial,[142] there is no evidence supporting his contention.

The record does reflect a July 18, 2012, Minute Entry indicating that Baham and his counsel

appeared for "UNSCHEDULED JUDICIAL ACTIVITY" during which the court received from

NOPD Central Evidence and Property an itemized list of clothing including: (1) red and green

hoodie; (2) black t-shirt: (3) blue jeans; (4) black socks; (5) Adidas tennis shoes; (6) brown boxers;

(7) towel; (8) gray under shirt; and (9) hat.[143]  However, there is no evidence regarding whether

that clothing was gathered from Baham's grandmother's house or whether it was the clothing

Baham was wearing when he turned himself in on January 22, 2011.[144]  Regardless, the jury was

clearly made aware that no clothing was tested for DNA or gunshot residue.

   It is uncontested that the names of witnesses in Detective Hurst's Supplemental Report

were redacted.[145]  According to the State, the names were redacted from the report to protect the

safety of those interviewed.[146]  Under Louisiana law, a defendant generally does not have a right

to an unredacted police report including the names of witnesses unless the defendant demonstrates

"a peculiar distinctive reason why fundamental fairness dictates discovery of the names of these

witnesses."[147]  At trial, the trial court found that defense counsel was not entitled to the redacted

---

[140] *Id*. at 74-75, 84.

[141] *Id*. at 75, 84.

[142] ECF No. 1-2, at 16.

[143] St. R. Vol. 1 of 6, 7/18/12 Mins. (1 page).

[144] *See* St. R. Vol. 1 of 6, 1/22/11 New Orleans Police Department Report, (1 page) (indicating Baham was arrested wearing 'RED LONG SLEEVE SHIRT, BLUE JEANS, WHITE SHOES.").

[145] *See* St. R. Vol. 1 of 6, 7/15/11 Inventory of Discovery; St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 82.

[146] ECF No. 21, at 23.

[147] *State v. Weathersby*, 29 So. 3d 499 (La. 2010) ("Simply stating 'this is a murder case' and defendant should 'have the benefit of eyewitnesses who can articulate who were the aggressors' does not constitute a

names.[148]  It is clear from the record that the defense had the redacted report and utilized the alternate clothing description and the video surveillance in an attempt to exonerate Baham.  Thus, Baham has not shown that prejudice resulted from the non-disclosure of the name of the witness who gave the alternate clothing description or any or any other witness' name that was redacted. Denial of relief on this issue was not contrary to or an unreasonable application of federal law. Baham is not entitled to relief on this claim.

### 4.        Vouching for Witness Credibility

Baham generally alleges that the prosecution vouched for the credibility of its witnesses.[149] However, his only allegation regarding this claim is that the prosecution attacked defense counsel and attacked the failure to call Baham's grandmother as a witness.[150]

A prosecutor cannot vouch for a witness' credibility because it implies that he has additional personal knowledge about the witness which he has garnered from an extrajudicial investigation.[151]  Neither action of which Baham complains, however, constitutes vouching for the credibility of a witness.  Further, a review of the trial transcript shows that the prosecution did not vouch for the credibility of any witness.

The denial of relief on this issue was not contrary to or an unreasonable application of federal law. Baham is not entitled to relief on this claim.

---

peculiar distinctive reason why fundamental fairness dictates discovery of the names of these witnesses. This is especially so given the State's and this Court's concern for the witnesses' safety.")

[148] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 82-83.

[149] ECF No. 1-2, at 8, 16.

[150] *Id*. at 16.

[151] *United States v. Ajaegbu*, 139 F.3d 898 (5th Cir.1998) (per curiam ) (citing *United States v. Carter*, 953 F.2d 1449, 1460 (5th Cir.1992)).

B.    **Claim Two: Violation of Right of Confrontation**[152]

Baham claims his confrontation rights were violated when he was not allowed to cross-examine certain witnesses.  Baham claims that the State introduced the statement of Robert Lotz through the testimony of Detective Hurst, violating his right to confront and cross-examine Robert Lotz.  He further contends that he was denied the right to confront Dr. Cynthia Gardner, the forensic pathologist who performed the autopsy, because the State called a different coroner to testify regarding the contents of the report.

In opposition, the State contends that Detective Hurst never explicitly testified that Robert Lotz gave him the name "Will" as the perpetrator.  Even if he had, the State continues, any error was harmless.  As for Baham's inability to examine the coroner who conducted the autopsy, the State contends that the United States Supreme Court has not determined whether an autopsy report is testimonial for purposes of the right to confrontation.  Even if the report were testimonial, the State argues that it is unlikely the testimony contributed to the verdict as the only issue in dispute was identity of the perpetrator.  Thus, any error was harmless.

The trial court, in addressing the issue regarding Robert Lotz, found no violation of the confrontation clause, although it did not address the coroner testimony.[153]  It found that Baham failed to identify any State witnesses at trial that he was not permitted to cross-examine, and that he was at liberty to subpoena any witnesses he wished to call to testify at trial.[154]  The Louisiana Fourth Circuit found that the issue was not reviewable under LA. CODE CRIM. PROC. art. 930.4(C) because Baham did not raise it on direct appeal and that he was free to subpoena witnesses for

---

[152] Baham refers to this issue as "ISSUE FOUR."  ECF No. 1-2, at 17.
[153] St. R. Vol. 1 of 6, 9/12/16 Ruling at 2.
[154] *Id*.

trial.  The Louisiana Supreme Court found Baham failed to meet his post-conviction burden of proof, citing LA. CODE CRIM. PROC. art 930.2.[155]

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[156]  This right ensures reliability of the evidence by requiring statements under oath, submission to cross-examination, and the opportunity for the jury to assess witness credibility.[157]  The Supreme Court has long held that testimonial statements, those statements made for the purpose of establishing or proving a particular fact, are *in*admissible in criminal prosecutions, unless the declarant is unavailable for trial and the defendant had a prior opportunity for cross-examination.[158]  Simply put, "the Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and the defendant had a prior opportunity to cross examine him."[159]

However, the Confrontation Clause does not prohibit the admissibility of non-testimonial statements.[160]  It applies only to "'witnesses' against the accused . . . those who 'bear testimony[,]'"[161], and only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."[162]  "It is the testimonial character of the statement that

---

[155] *State ex rel. Baham*, 251 So. 3d at 1069; St. Rec. Vol. 6 of 6, La. Sup. Ct. Order, 17-KH-0207, 8/31/18.
[156] U.S. Const. amend. VI.
[157] *California v. Green*, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).
[158] *Crawford v. Washington*, 541 U.S. 36, 59 & 68-89, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).
[159] *United States v. Gonzales*, 436 F.3d 560, 576 (5th Cir. 2006).
[160] *Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).
[161] *Crawford*, 541 U.S. at 51, 124 S. Ct. 1354.
[162] *Davis*, 547 U.S. at 821, 126 S. Ct. 2266.

separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."[163]

A Confrontation Clause claim presents a mixed question of law and fact.[164]  Therefore, this court must defer to the state courts' decision rejecting the claim unless petitioner demonstrates that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[165]

Here, there simply was no violation.  At trial, when asked how he developed Baham as a suspect, Hurst testified, "By speaking – initially we developed Will.  We knew Will.  We were provided with the name Will.  We spoke with Robert Lotz-- . . . and he advised us that Will's--."[166]  Defense counsel then objected.[167]  After an unrecorded sidebar during which the objection was sustained, the prosecution asked Hurst to focus on Darnell Williams and Derrick Lotz.[168]  Hurst explained that *Derrick Lotz* identified Baham from a six-pack line up.[169]  Upon recall, Hurst again testified the *Derrick Lotz* identified Baham as the shooter.[170]  It is clear from the record that Hurst did *not* testify that Robert Lotz gave the police Baham's name as the perpetrator or identified him as the perpetrator.

Even if there were a Confrontation Clause violation, multiple witnesses as well as the physical evidence implicated Baham as the perpetrator of the crime.  Lawrence testified that he witnessed Baham follow the victim out of the bar.[171]  Seconds later, he heard gunshots and then

---

[163] *Id.*
[164] *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008).
[165] 28 U.S.C. § 2254(d)(1).
[166] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 59.
[167] *Id.*
[168] *Id.* at 60.
[169] *Id.*
[170] *Id.* at 223.
[171] *Id.* at 145.

found the victim on the ground.[172]  He identified Baham from the video of the shooting.[173]  He testified that he gave the detective the name "Will."[174]  The State also presented the statement of Mitchell Marks from May 2011, during which he identified Baham as the shooter, as well as a jail telephone call between Marks and his girlfriend during which Marks stated he planned to "play dumb" at trial.[175]

The State also presented powerful testimony from Gregory Pelfrey, who testified that, while Pelfrey, Baham and other defendants were waiting in a holding cell in the courthouse for hearings on November 4, 2011, Baham openly admitted to the other defendants that he committed a murder but that the gun was in the river.[176]  According to Pelfrey, Baham told the others that a key witness was his acquaintance and that he did not plan to show up for court.[177]  Pelfrey also heard Baham say that the witness was around the corner when Baham shot the victim so there was no way he could have seen Baham commit the murder.[178]  Pelfrey testified that he saw Baham give his counsel a piece of paper that either was a writing or drawing related to the witness' sight line.[179]  Pelfrey completed a grievance form detailing the information when he returned to jail.[180]  Finally, the State introduced multiple surveillance videos throughout the trial so the jury was able to determine if Baham was the murderer.

Baham also raises a Confrontation Clause claim with regard to the coroner testimony.  Dr. Cynthia Gardner's autopsy report of the victim was reviewed and interpreted by Dr. Sandomirski

---

[172] *Id.* at 145-46.
[173] *Id*. at 147.
[174] *Id*. at 154.
[175] *Id*. at 183-85, 188-90, 194, 202, 206, 209-14.
[176] *Id*. at 236, 239, 241, 247, 251, 253, 255.
[177] *Id*. at 240.
[178] *Id*. at 241.
[179] *Id*. at 254-55.
[180] *Id.* at 243-44, 256.

because Dr. Gardner was out of the country.[181]  Dr. Sandomirski testified that the victim's cause

of death was multiple gunshots to the head and chest and that the injuries were not survivable.[182]

She testified that the manner of death was classified as a homicide.[183]  Defense counsel elected not

to cross-examine the witness.[184]

The Supreme Court did not specifically define testimonial or nontestimonial in *Crawford*.

It did make clear that the Confrontation Clause was concerned with "testimony," which "is

typically [a] solemn declaration or affirmation made for the purpose of establishing or proving

some fact," and noted that "[a]n accuser who makes a formal statement to government officers

bears testimony in a sense that a person who makes a casual remark to an acquaintance does

not."[185]   "[W]hatever else the term covers, it applies at a minimum to prior testimony at a

preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[186]

The Supreme Court expanded the definition of testimonial statements to include statements

that are "functionally identical to live, in-court testimony" in *Melendez–Diaz v. Massachusetts*.[187]

Circuit Courts are split on whether autopsy reports are testimonial or not.[188]  Thus, there is no

clearly established law by the United States Supreme Court that would require Dr. Gardner to

testify regarding the autopsy.[189]   Even if the autopsy report were testimonial under clearly

---

[181] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 118-121.

[182] *Id*. at 120.

[183] *Id*. at 120-21.

[184] *Id.* at 121.

[185] *Crawford*, 541 U.S. at 51.

[186] *Id.* at 68.

[187] *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 310–11 (2009).

[188] *See e.g. United States v. James*, 712 F.3d 79, 88 (2d Cir. 2013) (deciding that the autopsy report at issue was not testimonial "because it was not prepared primarily to create a record for use at a criminal trial.") (footnote omitted); *United States v. Ignasiak*, 667 F.3d 1217, 1231 (11th Cir. 2012) (concluding admission of autopsy reports through medical examiner who did not conduct or observe the autopsies violated Confrontation Clause)

[189] *See Murray v Cain*, Civ. No. 15-0827-BAJ-EWD, 2019 WL 141744, at *7 (M.D. La. Mar. 3, 2019); *Green v. Cain*, Civ. No. 14-2073, 2016 WL 6477038, at *14 (E.D. La. May 13, 2016) (the state courts'

established law, a Confrontation Clause violation is subject to a harmless error analysis.[190] Harmlessness depends on whether an error caused actual prejudice in that it "had substantial and injurious effect or influence in determining the jury's verdict."[191] To obtain federal habeas relief under *Brecht*, petitioner (not the State) has the burden of demonstrating that the error was not harmless.[192]

No one contested that fact that the victim died from gunshot wounds. Baham's defense was that he was not the perpetrator. Neither the autopsy report nor Dr. Sandomirski offered any information about the identity of the perpetrator. Baham has not shown that any error in the admission of Dr. Sandomirski's testimony had a substantial and injurious effect or influence in determining the jury's verdict.

For these reasons, any error was harmless error and the state courts' denial of relief was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Baham is not entitled to relief on this issue.

## C. **Claim Three: Sequestration of Jurors/Right to Present a Defense**[193]

Baham claims the trial court violated his right to a fair trial when it failed to sequester the jurors pursuant to LA. CODE CRIM. PROC. art. 791.[194] He further claims that the trial court allowed

---

denial of claim relating to inopportunity to cross-examine the doctor who performed the autopsy on the victim was not error given the absence of clearly established law relating to the Confrontation Clause's application to autopsy report by non-testifying experts ), *Order adopting report and recommendation*, 2016 WL 6441232 (E.D. La. Nov. 1, 2016)

[190] *Davis v. Ayala*, 576 U.S. 257, 270, 135 S. Ct. 2187, 2199 (2015); *Fry v. Pliler*, 551 U.S. 112, 120 (2007).
[191] *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).
[192] *Id.* at 637; *see Basso v. Thaler*, 359 F. App'x 504, 509 (5th Cir. 2010) (*Brecht* places the burden on the habeas petitioner to prove the error was not harmless).
[193] Baham refers to this issue as "ISSUE SIX: Trial court abused its discretion." ECF 1-2, at 21. Among his claims, Baham again argues that the State withheld evidence by redacting names of witnesses in its police reports provided to defense counsel. As the court has previously addressed this issue above, it will not readdress it.
[194] In Louisiana, "[i]n noncapital cases, the jury shall be sequestered after the court's charge and may be

the State to direct a verdict by fraud by forcing Derrick Lotz and Mitchell Marks to testify over defense counsel's objection without giving the witnesses immunity, in violation of their Fifth Amendment right against self-incrimination.[195]    Baham generally argues that the trial court interfered with his right to present a defense.[196]

The State responds that Baham's sequestration claim under state law is not cognizable, and there was no violation of article 791.[197]    It further argues that Baham fails to cite to any federal law supporting his claim that the trial court acted unreasonably in failing to sequester the jury.[198] As to the claims relating to the testimony of Marks and Derrick Lotz, the State argues that it is entitled to call the witnesses necessary to meet its burden of proof and that it was not required to give either witness immunity as it did not ask any questions that would violate either witness' Fifth Amendment privilege.[199]    It further argues that neither witness was a suspect in the case, so the Fifth Amendment right against self-incrimination was not applicable.[200]    The State claims that it questioned both witnesses about their prior statements and properly impeached them with their previous statements.[201]

The trial court rejected these arguments when raised in Baham's application for post-conviction relief:

Defendant's sixth claim alleges that this court abused its discretion in failing to sequester the jury in accordance with La. C.Cr.P. Art. 791.  However, because the defendant was not charged with a capital crime there was no requirement that the jury be sequestered.  Nor was there a request by the defendant to sequester the

---

sequestered at any time upon order of the court."  La. Code Crim. Proc. art. 791(C)
[195] ECF No. 1-2, at 22-24.
[196] *Id.* at 21, 24.
[197] ECF No. 21, at 28-29.
[198] *Id.* at 29..
[199] *Id.*.
[200] *.Id.*
[201] *Id.*

jury.  This Court did not believe any reason existed to warrant a sequestered jury.  This allegation is without merit.[202]

The trial court did not address Derrick Lotz, but with regard to Marks found:

> Defendant further complains that Mitchel Marks' statement was read to the jury in violation of Mr. Marks' Fifth Amendment right.  Mr. Marks made a prior statement to an investigator and then told his girlfriend that he was going to play dumb at trial.  Mr. Marks cannot refuse to testify in another defendant's trial based on the Fifth Amendment when his statement or testimony does not implicate him in a crime.  Additionally, this Court proceeded with great caution during the questioning of Mr. Marks to ensure that the State's questions did not implicate him in any criminal activity.[203]

The Louisiana Supreme Court found that Baham did not meet his burden of proof.[204]

With regard to Baham's argument that the state courts' denial of relief violated Louisiana law relating to sequestration of jurors, Baham was not charged with a capital crime.  Thus, jury sequestration was not required by state law.  Further, Baham does not show that either party even requested that the jury be sequestered.  More significantly, this claim cannot support federal habeas relief.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."[205]  In short, federal habeas review does not lie for errors of *state* law.[206]

Under federal law, to warrant relief, a petitioner must show that the refusal to sequester the jury resulted in a substantial likelihood of prejudice.[207]  Baham has neither alleged nor provided any evidence that the jury was exposed to outside influences or that the failure to sequester the

---

[202] St. R. Vol. 1 of 6, 9/12/16 Ruling at 2-3.

[203] *Id.* at 2.

[204] *State ex rel. Baham*, 251 So. 3d at 1069; St. Rec. Vol. 6 of 6, 8/31/18 La. Sup. Ct. Order, 17-KH-0207.

[205] *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir.1994) (quotation omitted);.

[206] *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).

[207] *United States v. Greer*, 806 F.2d 556, 557-58 (5th Cir. 1986) (citation omitted).

32

jury otherwise interfered with his right to a fair trial.[208]  He has not shown that the state courts'

decision was an unreasonable application of or contrary to of Supreme Court precedent.

Baham's argument that the trial court allowed the State to direct a verdict by fraud by

allowing Derrick Lotz and Mitchell Marks to testify over defense counsel's objection without

requiring the State to give them immunity similarly fails.  Before the testimony of Derrick Lotz

and Mitchell Marks, defense counsel objected.[209]  With the jury removed from the courtroom, the

trial court explained that the issue was whether any questions would trigger a Fifth Amendment

privilege.[210]  The prosecution explained that Marks was subpoenaed due to his knowledge of what

took place on the evening of the shooting.[211]  The prosecutor stated that it had "absolutely no

information whatsoever that would inculpate [Marks] in the murder" and absolutely did not intend

on pursuing any sort of principal or conspiracy theory as to Marks.[212]  The State said it would not

consider giving Marks immunity because he had not made any statements inculpating himself.[213]

The trial court advised it would be the "gatekeeper" and determine whether any question would

violate the witnesses' Fifth Amendment rights and disallow questioning on a question by question

basis, as necessary.[214]  The trial court reiterated that it would not require Marks to answer questions

---

[208] *See Goudeau v. Cain*, Docket No. 16-cv-732, 2017 WL 946726, at *6 (W.D. La. Jan. 18, 2017) (citing *Lathers v. Cain*, 2011 WL 1793274 (M.D. La. Apr. 7, 2011)), *Order adopting report and recommendation*, 2017 WL 951632 (Mar. 8, 2017), *certificate of appealability denied*, 17-30259 (5th Cir. Feb. 6, 2018); *Howard v. Warden, Louisiana State Penitentiary*, Civ Action No. 1:14-CV-00514, at *12 (W.D. La. June 18, 2015) (petitioner failed to demonstrate a constitutional claim for habeas relief where he neither alleged nor showed "his trial atmosphere was utterly corrupted by press coverage or that his trial was rendered fundamentally unfair by any discussion or misconduct by the jurors during jury recesses."), *certificate of appealability denied*, 15-30586 (5th Cir. Sept. 16, 2016).
[209] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 101-03.
[210] *Id*. at 103.
[211] *Id*. at 104-05.
[212] *Id*. at 104.
[213] *Id*.
[214] *Id*. at 106-11.

that would violate his Fifth Amendment privilege.[215]  After reviewing Marks' statement, the trial court again stated it would not allow the State to ask questions that infringed upon Marks' right to remain silent.[216]

As for Derrick Lotz, the prosecution explained it intended to ask him everything he observed the night of the murder.[217]  The trial court similarly ruled that, while Lotz had been placed on the scene by video surveillance and witnesses, Lotz did not have Fifth Amendment privilege not to testify and he would prevent him from answering any question that might violate the privilege.[218]  Defense counsel objected to the rulings as to both witnesses.[219]

Neither Derrick Lotz nor Marks were suspects in the murder and the State had no intention of charging them in the murder.  Upon questioning them, the State asked them about the statements they had given to law enforcement identifying Baham as the shooter, and properly impeached their testimony when they both claimed to have lied previously.  None of the questions posed to either of those witnesses implicated their rights against self-incrimination.  Baham has not demonstrated a violation of applicable federal constitutional law by the trial court's rulings regarding these witnesses' testimony.

As for his claim that the trial court interfered with his right to present a defense, under federal law, a defendant has a constitutional right to present a complete defense.[220]  While the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, this right is not absolute.[221]  Broad latitude is granted to states to establish rules excluding

---

[215] *Id*. at 109-11.
[216] *Id*..
[217] *Id*. at 112.
[218] *Id*. at 113-14.
[219] *Id*. at 114-15.
[220] *Taylor v. Illinois*, 484 U.S. 400, 408 (1988).
[221] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

evidence from criminal trials.[222]  The Supreme Court has "[o]nly rarely . . . held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."[223]  The Court has instead recognized that the Due Process Clause does not guarantee the right to introduce all evidence the defendant deems relevant, because the right to present even relevant evidence is not "absolute."[224]  The right to present a complete defense is not "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."[225]

While the trial court allowed Marks and Derrick Lotz to testify, those rulings, which did not violate the witnesses' Fifth Amendment right against self-incrimination, did not impact Baham's right to present his mistaken identity/actual innocence defense.  The defense attempted to bolster the testimony of Marks by eliciting testimony that the statement he gave to Detective Darling was uncounseled and coerced because Marks was afraid that law enforcement would attempt to charge him with the murder.[226]  Similarly, the defense elicited testimony from Derrick Lotz that his family pressured him to talk to detectives and that the detectives threatened to arrest him if he did not give a statement.[227]  Derrick Lotz also appeared to suggest that his uncle, Robert Lotz, appeared on the surveillance video rather than Derrick Lotz.[228]  Baham also effectively presented his defense through the cross-examination and attempt to discredit certain State's witnesses.

---

[222] *Id*.; *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013).

[223] *Jackson*, 133 S. Ct. at 1992 (citations omitted).

[224] *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).

[225] *Taylor*, 484 U.S. at 410.

[226] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 217-20.

[227] *Id*. at 169-170.

[228] *Id*. at 171.

While the defense was unable to identify, and thus call at trial, a witness who gave a different clothing description of the alleged perpetrator, that limitation did not effectively prevent him from presenting his defense.  The jury heard evidence that Detective Hurst was given two different clothing descriptions, both of which Detective Hurst documented in his report, and the jury was able to view the clothing Baham was wearing from the video surveillance evidence.[229]  Additionally, the video surveillance was played many times throughout the trial and defense counsel questioned the witnesses about the identities of the persons depicted on the videos.[230]  After hearing all the testimony and viewing the evidence, the jury apparently found more credible the evidence that contradicted Baham's misidentification/actual innocence defense.

Accordingly, Baham has not shown that the state courts' determination was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  He is not entitled to federal habeas relief on these claims.

### D.  Claim Four: Effective Assistance of Counsel[231]

Baham generally alleges that he was denied effective assistance of counsel.[232]  He, however, makes no arguments about either his trial or appellate counsel performing deficiently.  Rather, as the State points out, the entirety of his claim is identical to his previous claim relating to the trial court's abuse of discretion.[233]

---

[229] *Id.* at 72-73, 75, 79-81, 89.
[230] *Id*. at 47-50, 54-59, 146-49, 159-60, 229.
[231] Baham refers to this claim as "ISSUE SEVEN" in his habeas petition.  ECF No. 1-2, at p. 24.
[232] ECF No. 1-2, at 24-25.
[233] ECF No. 21, at 30.

Baham must present more than a presumptive, conclusory assertion to establish a claim for ineffective assistance of counsel.[234]  He has not, and therefore, is not entitled to relief for that reason alone.[235]

Before the state courts, however, Baham did raise specific claims of ineffective assistance of trial and appellate counsel.  In this case, he has referred to his ineffective assistance of counsel claim as "ISSUE SEVEN," which, in his application for post-conviction relief, alleged *only* ineffective assistance of trial counsel.[236]  As he does not refer to "ISSUE EIGHT" which alleged ineffective assistance of appellate counsel,[237] I will not address that issue.

In his post-conviction application, Baham claimed in issue seven that he was denied effective assistance of counsel when his trial counsel: (1) failed to file a motion to quash the bill of information charging him with second degree murder; (2) failed to request discovery, investigate the case, and inadvertently admitted Baham's guilt to the jury through stipulations related to Pelfrey; (3) failed to prepare a defense of innocence; and (4) failed to seek funding for DNA or gunshot residue testing of clothing taken from his grandmother's home.[238]

The state trial court found that Baham's claim regarding the failure to file a motion to quash was meritless as he was charged by a bill of indictment.[239]  It also found that defense counsel did not stipulate to the truthfulness or trustworthiness of Pelfrey's statement or testimony, but rather

---

[234] *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

[235] *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *accord United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) ("To succeed on [an] ineffective assistance claim, [a petitioner] bears the burden of demonstrating that counsel's performance was deficient and that the deficient performance prejudiced his defense. [A petitioner] cannot escape this burden merely by stating his conclusion.").

[236] ECF No. 1-2, at 24; St. R. Vol. 1 of 6, 2/18/16 Memorandum of Law in Support of Application for Post-Conviction Relief, at 27-32.

[237] St. R. Vol. 1 of 6, 2/18/16 Memorandum of Law in Support of Application for Post-Conviction Relief, at 32-34.

[238] *Id*. at 31.

[239] St. R. Vol. 1 of 6, 9/12/16 Ruling at 3.

defense counsel cross-examined Pelfrey and the jury determined his credibility.[240]  The trial court found that the record contradicted Baham's claim that defense counsel failed to request discovery and investigate the case.[241]  As for the failure to seeking funding for DNA and gunshot residue testing, the trial court found that testing the clothing and presentation of the result to the jury may not have changed the outcome of the trial.[242]  The court explained that Baham had traveled to Houston after the shooting and that the clothing could have been cleaned or replaced with new items by the time it was collected.[243]  Ultimately, the Louisiana Supreme Court denied Baham's related writ application denying relief for Baham's failure to meet his post-conviction burden of proof under La. Code Crim. Proc art. 930.2.[244]

The issue of ineffective assistance of counsel is a mixed question of law and fact.[245]  Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

The United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[246]  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[247]  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[248]

---

[240] *Id.*

[241] *Id*.

[242] *Id.* at 3-4.

[243] *Id.*

[244] *State ex rel. Baham*, 251 So. 3d at 1069; St. Rec. Vol. 6 of 6, La. Sup. Ct. Order, 17-KH-0207, 8/31/18.

[245] *Strickland v. Washington*, 466 U.S. 688, 698 (1984); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

[246] 466 U.S. at 697

[247] *Id.* at 687-88.

[248] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[249]  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[250]

On habeas review, the United States Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[251] "Even under de novo review, the standard for judging counsel's representation is a most deferential one."[252]  The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[253]

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.[254]  "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[255]  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

---

[249] *Kimler*, 167 F.3d at 893.

[250] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

[251] *Harrington*, 562 U.S. at 105.

[252] *Id.*

[253] *Strickland*, 466 U.S. at 690.

[254] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

[255] *Harrington*, 562 U.S. at 105.

perspective at the time of trial.[256]  Tactical decisions, when supported by the circumstances, are

objectively reasonable and do not amount to unconstitutionally deficient performance.[257]

### 1. Failure to File a Motion to Quash

Baham claims his counsel failed to file a motion to quash the bill of information charging

him with second degree murder.  He claims he was required to be charged by a bill of indictment

issued by a grand jury.[258]

Louisiana law provides that prosecutions for offenses that are punishable by life

imprisonment, such as second degree murder, or death, shall be instituted by indictment by a grand

jury.[259]  The record reflects that Baham was in fact charged by a bill of indictment.[260]  Thus, there

was no need for counsel to file a motion to quash, and a motion to quash would have been meritless.

Counsel does not act deficiently when he fails to file a meritless motion.[261]  Baham is not entitled

to relief as to this claim.

### 2. Pelfrey's Testimony

Baham claims his trial counsel admitted Baham's guilt through the stipulations relating to

Pelfrey.  He claims his counsel should have required the prosecution to "authenticate" Pelfrey's

testimony.[262]

---

[256] *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

[257] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999), *cert. denied*, 528 U.S. 1013 (1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997); *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[258] St. R. Vol. 1 of 6, 2/18/16 Memorandum of Law in Support of Application for Post-Conviction Relief, at 28-29.

[259] La. Code Crim. Proc. art. 382(A).

[260] St. R. Vol. 3 of 6, 1/17/11 Bill of Indictment.

[261] *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

[262] St. R. Vol. 1 of 6, 2/18/16 Memorandum of Law in Support of Application for Post-Conviction Relief,

Gregory Pelfrey testified that he had a court date on November 4, 2011, in Section L.[263] He sat in a cell with other defendants who were waiting for their cases to be called.[264] Pelfrey identified Baham as one of the defendants in the cell with him.[265] Pelfrey testified that other defendants began questioning Baham about his case and that Baham stated that he was charged with murder but that the prosecution had no evidence.[266] Pelfrey recalled that Baham openly admitted that he had committed the murder and said the gun had been thrown in the river.[267] According to Pelfry, Baham said that one of the key witnesses was an acquaintance from the neighborhood and that he was not going to show up to court.[268] Baham said that the witness was around the corner and could not have seen him kill the victim.[269] He advised that his attorney's name was John Fuller and that his court date was re-set for December 15, 2011.[270] Baham advised that he was housed in A-1 in Orleans Parish prison and had been in jail for nine months.[271] When Pelfrey went back to his cell, he handwrote a grievance form and gave it to a guard a few days later.[272] Pelfrey identified a typed version by the Sheriff's Department of his statement and testified that it was memorialized word for word.[273] Defense counsel did not object to the admission of the typed statement.[274] Pelfrey stated that had never spoken to law enforcement about Baham and that he left Orleans Parish for Kansas on January 12, 2012.[275] Pelfrey testified that he

---

at 29.
[263] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 237.
[264] *Id*. at 237-38.
[265] *Id.* at 238-39, 247.
[266] *Id*. at 239-40, 251.
[267] *Id*. at 240, 241, 251, 253, 255.
[268] *Id*. at 240.
[269] *Id*. at 241, 254-55.
[270] *Id.* at 241-42, 247, 256.
[271] *Id.* at 243-44, 246.
[272] *Id*. at 243.
[273] *Id*. at 245-46.
[274] *Id.* at 245.
[275] *Id*. at 246.

had already been sentenced on his case and that no one offered him anything in exchange for his testimony.[276]  He stated that he had learned a few days before Baham's trial that he was subpoenaed to testify.[277]  Pelfrey admitted he had never met Baham before November 4, 2011.[278]  On cross-examination, Pelfrey testified that he saw Baham hand defense counsel a piece of paper that Baham had drawn or written about the witness' line of sight.[279]

After Pelfrey finished testifying, the parties stipulated that on November 4, 2011, both Pelfrey and Baham were in Section L for hearings on motions.[280]  They further stipulated that Baham was on the Section L docket for December 15, 2011.[281]  Finally, they stipulated that Baham was housed in Orleans Parish Prison A-1.[282]

Where a stipulation is a concession of facts which the State could have easily established at trial and no advantage would have inured to a petitioner had counsel refused to enter the stipulation, counsel is not ineffective when he enters into such a stipulation.[283]  Here, the prosecution could have easily established that both Pelfrey and Baham were on the docket for November 4, 2011, and that Baham, was on the docket for December 15, 2011.  In fact, the Docket Master and the minutes included in the record indicates that Baham was set for hearing on both days and that his November 4, 2011 hearing was continued on that date until December 15, 2011.[284]  The State could have presented similar evidence that Pelfrey was on the docket for

---

[276] *Id.* at 245.

[277] *Id*.

[278] *Id.* at 246, 252.

[279] *Id*. at 254-55, 265.

[280] *Id*. at 266.

[281] *Id.* at 266-67.

[282] *Id.* at 267.

[283] *See Berry v. King*, 765 F.2d 451, 454–55 (5th Cir. 1985); *McGee v. Cain*, Civ. No. 06–11360, 2007 WL 4591227, at *12 (E.D. La. Dec. 26, 2007); *Parker v. 24th Judicial District Court*, Civ. No. 06–10551, 2007 WL 2893852, at *6 (E.D. La. Sept. 27, 2007).

[284] St. R. Vol. 1 of 6, 7/28/17 Docket Master at 1; *id.*, 11/4/11 Mins. (one page); *id*., 12/15/11 Mins. (one page).

November 4, 2011.  The State could have also easily established where Baham was housed during that time.  Presumably defense counsel made a strategic choice to enter into the foregoing stipulations rather than ensure detailed testimony regarding these facts that would have supported Pelfrey's credibility. Baham has not shown that there was any apparent advantage for defense counsel to refuse to enter into the stipulations.

As for the failure to "authenticate" Pelfrey's testimony, defense counsel vigorously cross-examined Pelfrey regarding the statements Baham allegedly made in an attempt to undermine Pelfrey's credibility.[285]  During cross-examination, Pelfrey admitted that he did not know when or where the shooting occurred, the victim's name, how Baham escaped, the type of firearm used, and other various details about the murder.[286]  Pelfrey admitted that he did not mention in the grievance Baham's name, the gun or the witness' sight line, although he explained he was as vague as possible because some guards could not be trusted.[287]  Baham simply has not demonstrated that defense counsel was deficient in his cross-examination of Pelfrey.

The denial of relief on these issues was not contrary to or an unreasonable application of *Strickland*.  Baham is not entitled to relief on this issue.

### 3. Failure to Request Discovery, Investigate, Seek Funding for DNA or Gunshot Residue Testing, and Formulate a Defense

Baham claims his trial counsel failed to investigate the case, did not file for discovery, and did not prepare a defense.  Baham also claims his counsel failed to request funding for DNA or gunshot residue testing of his clothing and failed to present expert testimony regarding same.

---

[285] St. R. 2 of 6, 7/16-18/12 Trial Tr. at 247-65.
[286] *Id*. at 259-60.
[287] *Id*. at 261-62, 265.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege *with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial.'"[288] A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.[289] To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed.[290]

As an initial matter, Baham's claim that his counsel failed to request discovery is patently false. The record reveals that defense counsel filed a motion for bill of particulars, discovery and inspection, and a motion to compel.[291] The State responded to the request for discovery and an inventory of discovery was provided to defense counsel, with both documents signed by the prosecutor and defense counsel.[292]

Baham also failed to establish that counsel's investigation was inadequate in any respect. In fact, he presented no evidence whatsoever as to what investigative steps counsel actually took.[293] Without such evidence, he cannot show that counsel performed deficiently. While Baham claims that defense counsel failed to seek funds to have his clothing tested for gunshot residue or DNA, as the state trial court explained, Baham fled to Houston after the murder and was missing for days during which time any clothing could have been cleaned or replaced by the time it was

---

[288] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (emphasis added, citation omitted); *accord Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).

[289] *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").

[290] *Moawad,* 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (Order adopting report and recommendation).

[291] St. R. Vol. 1 of 6, Motion for Bill of Particulars (undated); *id.*, 7/9/12 Motion to Compel Evidence.

[292] St. R. Vol. 1 of 6, 7/10/12 State's Response to Defense Motion for Discovery; *id.,* 7/15/11 Inventory of Discovery.

[293] *Netter v. Cain*, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), *R&R adopted*, 2016 WL 7116070 (E.D. La. Dec. 7, 2016).

collected.  Baham provided no evidence that the clothes Baham was wearing the night of the murder were actually seized, that the clothing in custody was the same clothing that he was wearing at the time of the crime, or that the clothing worn on the night of the crime had not been laundered. In short, Baham has not shown that any beneficial information would have been revealed by such testing.  Rather, his assertions are entirely speculative.  Such bare speculation is not sufficient to meet his burden of proof.[294]

Further, it is well settled that " '[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"[295]  To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.[296]  These requirements apply to both expert and lay witnesses.[297]  "[T]he seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"[298]

Baham offers only self-serving, speculative and conclusory allegations that an expert in DNA and/or gunshot residue would have in fact testified and would have done so in a manner consistent with Baham's version of the facts.  Therefore, he has failed to meet his burden of proof with respect to this claim.[299]

---

[294] *See Thomas v. Cain*, Civ. No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

[295] *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir.2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978)); *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir.2008).

[296] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009) (citing *Bray*, 265 F. App'x at 298).

[297] *Woodfox v. Cain*, 609 F.3d 744, 808 (5th Cir. 2010).

[298] *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).

[299] *See, e.g., United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); *Anthony v. Cain*, Civ. No. 073223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate

Finally, Baham claims his counsel failed to formulate a defense of actual innocence.  To prevail on a claim that counsel was ineffective for failing to pursue a certain defense, a petitioner must show that the defense in question was in fact a viable one.[300]

In this case, counsel actually presented the defense that Baham urges (i.e., that he was innocent and that it was a case of misidentification).  During trial, defense counsel both attacked the credibility of the State's witnesses and presented defense witnesses.  There is no evidence that any other witnesses were available to testify and that they would have done so in a manner beneficial to the defense.  Defense counsel therefore cannot be deemed ineffective for attempting to prevent the State's from proving its case beyond a reasonable doubt through effective defense cross-examination of the State's witnesses and the presentation of defense witnesses.  The fact that the defense was not successful, i.e., that Baham was convicted as charged, does not mean that counsel's actions leading to the conviction were deficient.[301]   "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[302]

Baham has failed to establish any deficiency or prejudice arising from his counsel's alleged failure to request discovery, investigate, request funds for gunshot residue and DNA testing, and

---

as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 3:08-CV-0032-n, 3:03-CR-0188-N(09), 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director*, Civ. No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

[300] *See, e.g., Otero v. Louisiana*, Civ. No. 12-1332, 2013 WL 6072716, at *14-15 (E.D. La. Nov. 18, 2013); *Higgins v. Cain*, Civ. No. 09-2632, 2010 WL 890998, at *9 n. 24 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011).

[301] *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

[302] *Strickland*, 466 U.S. at 689 (citations omitted).

to formulate a defense.  The denial of relief on these issues was not contrary to or an unreasonable application of *Strickland*.

### E.  Claim Five: Prosecutorial Misconduct – Personal Attacks on Defense Counsel[303]

In his next claim, Baham claims that the prosecution made numerous personal attacks on defense counsel during his questioning of Mitchell Marks.  He specifically claims that the prosecutor repeatedly asked whether defense counsel had told Marks not to come to trial to testify. Baham concludes that the State's case was weak and that the prosecution's remarks, which implied that Baham communicated to Marks defense counsel's desire that he not testify at trial caused the jury to find him guilty.

The State responds that the comments were isolated and that the trial court instructed the jury to disregard them.  The State continues that the case against Baham was strong and that the Louisiana Fourth Circuit did not misapply the law in denying the claim on direct appeal.  It further contends that Baham has not established that the Fourth Circuit's ruling that the prosecutor's comments did not contribute to the verdict is unreasonable.

Baham raised this issue on direct appeal.  The Louisiana Fourth Circuit, in denying relief, explained as follows:

> In the first assignment of error, defendant contends that his right to a fair trial was violated when the prosecutor, Mr. Napoli, made numerous personal attacks on defense counsel, Mr. Fuller, during the testimony of Mitchell Marks, a state witness.

> At trial, Marks recanted his prior recorded statement to Detective Darling, claiming he was coerced with the threat of a murder charge.  He denied returning to the bar with defendant or having any knowledge of events related to the shooting. In an attempt to refresh Marks' memory, the following dialogue occurred among the prosecutor, the defense attorney and the trial court:

---

[303] Baham refers to this claim as "ISSUE NO. 1" in his habeas petition.  ECF No. 1-2, p. 28.

MR. NAPOLI: ... Isn't it a fact that on these jail tapes that you talk about how this defense attorney has been encouraging you not to come to court?

MR. FULLER: Objection!  That's a lie!  That's a bad lie! I have never seen this man before in my life!

THE COURT: Whoa, whoa, whoa!  This is cross-examination of a hostile witness.  He can ask him whatever he wants.

MR. MARKS: I don't know that man.

MR. NAPOLI: You never said that on the jail tapes?

MR. MARKS: I don't know what I said, but I don't know him.

MR. NAPOLI: Judge, at this time I would request permission to play the jail calls as impeachment.

Later during the questioning of Mr. Marks, the following occurred:

MR. NAPOLI: Judge, we would like to play the part now about the attorney.

MR. FULLER: Yeah, I would like to hear that part actually.

THE COURT: Well that makes all of us. We all want to hear.

(Tape played at this time.)

MR. FULLER: Objection!

MS. BERTHELOT: Excuse me!

THE COURT: Stop it! Stop it!

MR. FULLER: They specifically said that I said and that is clearly not the case.

THE COURT: That's sustained.

MR. NAPOLI: Let me ask you this.  Isn't it true that William Baham told you that his attorney didn't want you to come to court?

MR. MARKS: No.

MR. NAPOLI: Play it.

THE COURT: William Baham told you that his attorney--that's sustained.

MR. NAPOLI: Judge--

THE COURT: There is no foundation for the conversation between Baham and Fuller.  It would be attorney client privilege. It's sustained.

MR. NAPOLI: While you were on the docks—has there every [sic] been a time when you are on the docks with William Baham?

MR. MARKS: One time.

MR. NAPOLI: When he came up to you that one time didn't he encourage you not to come to court?

MR. MARKS: No.

MR. NAPOLI: He didn't?

MR. MARKS: No.

MR. NAPOLI: Judge, at this time we would request to play that call now considering that that is directly—

THE COURT: You can play anything that has something to do with Baham and this man, but I certainly didn't hear anything that placed counsel Fuller in any way shape or form. Counsel Fuller would not be bound by anything that his client allegedly told somebody else when he wasn't present or knew about.

MR. NAPOLI: But if he instructed him to do it though, Judge.

THE COURT: We don't have that and strike that. Ignore that. Be careful. You are getting ready to start treading water.

(Tape played at this time.)

MR. NAPOLI: So when you were on the docks with William he told you that the instructions of his attorney was for you not to come to court?

MR. MARKS: No. I asked him—I asked him what was it because I thought his lawyer sent me a subpoena.

MR. NAPOLI: I have no further questions, Judge.

THE COURT: I want you to put it out of your head that there was any wrongdoing whatsoever by Mr. Fuller. This witness could or could not be telling the truth. He may or may not have spoken with the accused on this matter. His voice is not on the tape and for Mr. Fuller to be responsible for something this man allegedly had a conversation with this man that we have not heard. I ask you to take it with a grain of salt relative to Mr. Fuller.

On cross examination by defense counsel, Marks explained that he was served a subpoena while in court on a probation violation hearing. He identified Ms. Berthelot, one of the prosecutors, as the person who handed him the subpoena. During closing arguments, Ms. Berthelot stated:

I came into court and I gave him [Marks] a subpoena.... Come to court and tell us what you know. But you hear when he goes downstairs and he says I talked to Will. I asked Will was it your attorney or was it the State because I [Berthelot] actually didn't talk to him.... So he asks Will. Will, your attorney wants to subpoena me? Hell, no. My attorney doesn't want to hear anything you have to say. He told me to tell you don't fuck with that. Don't go.

As the record reflects, defense counsel repeatedly objected to the prosecutor's comments and questions. The trial court sustained the defense's objections and gave a cautionary instruction to the jury. Defendant asserts the admonitions were inadequate given that the prosecutor deliberately gave the false impression that defense counsel had communicated to Marks, through defendant, that he should not testify for the state. Regardless of the motive, defendant argues, the prosecutor's comments and questioning undermined the defense and damaged defense counsel's credibility, causing the jury to reject his arguments.

In *State v. Brumfield*, 96–2667 (La.10/20/98), 737 So.2d 660, the prosecutor argued during closing argument that " 'during the course of this trial those very police officers who go about and try to protect us every day have been assailed [on cross-examination by defense counsel], have been defamed through the allegations of this defendant when he is the person who is on trial.'" *Id*. at p. 9, 737 So.2d at 666. The Louisiana Supreme Court found that the prosecutor's argument was not improper, finding that although the State should refrain from making personal attacks on defense strategy and counsel, "the prosecutor's statement about defense counsel's cross-examination of police officers was a fair comment pointing out the frequently used strategy of attempting to shift the focus from the accused to the accuser." *Id*.

In *State v. Tassin*, 11–1144 (La. App. 5 Cir. 12/19/13),129 So.3d 1235, the court stated:

> The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Consequently, the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982); *State v. Ortiz*, 11–2799 (La.1/29/13), 110 So.3d 1029, 1034, *cert. denied*, —— U.S. ——, 134 S.Ct. 174, 187 L.Ed.2d 42 (2013). While a prosecutor should prosecute with "earnestness and vigor" and "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

*Tassin*, 11–1144, pp. 19–20, 129 So. 3d at 1249.

In *Tassin*, defendant argued that his rights to counsel, due process, and a fair trial were violated when the prosecutor attacked defense counsel's integrity and denigrated the defense throughout trial. The defendant argued that the trial court erred by overruling the defense objections, refusing to give a remedial instruction, and denying requests for a mistrial. The appellate court noted that the prosecutor's conduct during the trial went beyond the bounds of "earnestness and vigor," and that the prosecutor, at times, clearly made inappropriate and unprofessional comments. However, the court found that the comments and unprofessional conduct of the prosecutor did not affect the fairness of defendant's trial and therefore did not require the reversal of defendant's conviction. *Id.* The court reached this conclusion, citing *United States v. Jones*, 839 F.2d 1041, 1049–50 (5th Cir.1988), a case in which the prosecutor had accused defense counsel of suborning perjury. In considering whether this amounted to reversible error, the *Jones* court considered three factors: the magnitude of the prejudicial effect of the statement, the efficacy of any cautionary instructions, and the strength of the evidence of the defendant's guilt. The *Jones* court determined that the prosecutor's comment, " 'while it no doubt impugned the integrity of [defense counsel], had little chance of

affecting the determination of guilt.'" *Tassin*, 11–1144, p. 22, 129 So.3d at 1250–1251.

In *United States v. Murrah*, 888 F.2d 24 (5th Cir.1989), a case cited by defendant, the United States Fifth Circuit Court of Appeal considered serious complaints of prosecutorial misconduct focusing on comments made by the prosecutor in opening statements and closing argument. "The comments involved two discrete matters: evidence which was discussed but not produced, and charges the defendant and/or his counsel hid a witness." *Id*. at 25. The Court stated that the trial court in response to the prosecutor's improper remarks "opted to rectify this improper comment by merely reminding the jury to 'recall what the evidence was in the case.'... In such a setting the court should have provided more effective instructions to offset the prosecutor's comments...." *Id*. at 26. The Court proceeded to apply the three factors analysis performed by the courts in *Jones* and *Tassin*: "the magnitude of the prejudicial effect, the efficacy of the cautionary instructions, and the strength of the evidence of defendant's guilt." *Id*. at 28. The Court found that due to the circumstantial nature of the case and the pervasiveness of the improper conduct by the prosecutor, the trial court's instructions did not neutralize the damaging effect of the remarks. *Id*. at 26. The Court found the remarks tainted the trial, reversed the conviction, and remanded the case. *Id*. at 28.

The *Murrah* case is distinguishable from the present case because the complained of conduct was pervasive throughout the trial. Here, the objectionable remarks by the prosecutor occurred during Marks' testimony and his attempt to recant his earlier statement. The trial court sustained all of the defense counsel's objections and instructed the jury that defendant's counsel did nothing wrong. In addition, contrary to defendant's assertions, the state presented substantial evidence at trial from which the jury could have found the defendant guilty. Detective Hurst testified that the videos from both the bar and a neighbor down the street captured the murder and defendant fleeing the scene. Lawrence identified the victim and defendant in the bar video and related it to his personal observation from that night. Furthermore, defendant has failed to show how he was prejudiced by the statements of the prosecutor. Thus, the verdict was not attributable to the prosecutor's statements. This assignment of error is meritless.[304]

The Louisiana Supreme Court denied relief without stated reasons.[305]

To establish a due process violation arising from the actions of the prosecutor, be it improper animosity or other misconduct, the habeas petitioner must demonstrate that his trial was

---

[304] *Baham*, 151 So. 3d at 701-704; St. R. Vol. 1 of 6, Louisiana Fourth Circuit Court of Appeal Opinion, 2013-KA-0058, at 4-10, October 1, 2014.
[305] *Baham*, 170 So. 3d at 613; St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2014-KO-2176, 9/18/15.

rendered fundamentally unfair by the prosecutor's specific actions.[306]  The Supreme Court has recognized this as a "highly generalized" standard that requires proof of prejudice to the defense during trial.[307]  Even in the case of the most "egregious prosecutorial misconduct," the petitioner is entitled to relief only "upon a showing of actual prejudice to the accused."[308]

Federal courts apply "a two-step analysis to charges of prosecutorial misconduct."[309]  A court first decides whether the prosecutor's actions were improper and, if so, the court then determines whether the actions "prejudiced the defendant's substantive rights."[310]  Prosecutorial misconduct violates the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[311]  "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'"[312]

For purposes of federal habeas review, a claim of prosecutorial misconduct presents a mixed question of law and fact.[313]  The Court must determine whether the denial of relief was contrary to or an unreasonable application of Supreme Court law.

The first inquiry is whether the prosecutor asked improper questions or made an improper remark.  In this case, the prosecution questioned Marks about whether defense counsel had

---

[306] *See Darden v. Wainwright*, 477 U.S. 168 (1986).

[307] *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (the *Darden* standard for evaluating claims of prosecutorial misconduct is "highly generalized"); *see Gallego v. McDaniel*, 124 F.3d 1065, 1079 (9th Cir. 1997), *cert. denied*, 524 U.S. 917 (1998) (petitioner failed to show prejudice in his trial based on prosecution teams post-trial book contract entered into after trial); *Jones v. Hedgpeth*, No. 07-3906, 2011 WL 5221878, at *20 (C.D. Cal. Mar. 18, 2011), *report adopted*, 2011 WL 5323514, at *1 (C.D. Cal. Nov. 2, 2011) (petitioner failed to show that the fairness of his trial was affected by an alleged relationship between the prosecutor and his ex-mother in law or by his lawsuit against the county sheriff's office).

[308] *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir.), *cert. denied*, 459 U.S. 1038 (1982).

[309] *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002).

[310] *Id.*

[311] *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[312] *Parker*, 567 U.S. at 48 (quoting *Yarborough*, 541 U.S. at 664).

[313] *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n. 4 (5th Cir. Apr. 16, 2002).

encouraged him not to appear at trial.[314]  The State played the audio of a jail telephone call between Marks and his girlfriend during which Marks apparently told her defense counsel told him to not come to court.[315]  The trial court sustained defense counsel's objection.[316]  The trial court also sustained the objection to Marks' statement on the telephone that Baham told him defense counsel did not want Marks to come to court.[317]  The trial court explained that there was no foundation for a conversation between Baham and his attorney and that defense counsel was not bound by anything Baham told someone else that his attorney allegedly said.[318]  The trial court further instructed the jury that they were not to consider any alleged wrongdoing by defense counsel.[319]

On cross-examination, Marks confirmed that Baham's counsel never came to see him at that jail, and that the cross-examination at trial was the first time they had ever spoken.[320]  He further confirmed that the prosecution had presented him with a subpoena to testify at trial when he was in a courtroom for violation of probation proceedings.[321]

While the prosecution's questions and remarks relating to defense counsel's alleged desire that Marks not appear at trial were improper, Baham has not shown that the prosecution's misconduct "so infected the trial with unfairness that it denied the defendant due process."[322]  The questions and comments were not persistent nor pronounced.  Rather, they occurred during the questioning of one witness out of seventeen State witnesses and those questions were struck.  Not only did the trial court strike them, but it admonished the jury, explaining that defense counsel was

---

[314] St. R. Vol. 2 of 6, 7/16-18/12 Trial Tr. at 195.
[315] Id. at 200-03.
[316] Id. at 203.
[317] Id.
[318] Id. at 203-04.
[319] Id. at 205.
[320] Id. at. 215.
[321] Id. at 200.
[322] Darden, 477 U.S. at 181.

not bound by anything that Baham told someone defense counsel said outside of defense counsel's presence and that they should "put it out of [their] head[s] that there was any wrongdoing by Mr. Fuller."[323]   Absent extraordinary circumstances, jurors are presumed to follow the instructions given them by the court.[324]

When viewed as a whole, the record contains ample evidence apart from the prosecutor's remarks upon which the jury justifiably concluded that Baham was guilty of second degree murder. In the overall context of the trial, it cannot be concluded that Baham's conviction would not have resulted but for the prosecutor's questions and comments during the examination of Marks.

The denial of relief by the state courts on this issue was not contrary to, or an unreasonable application of, Supreme Court precedent.   Baham is not entitled to federal habeas corpus relief on this claim.

**F.   Claim Six: Marks' Transcript[325]**

Baham claims that the trial court denied him due process when it allowed the jury to have a transcript of Marks' statement to police in the jury room during deliberations.   Baham cites LA. CODE CRIM. PROC. art. 793[326] along with various Louisiana cases.[327]   The State responds that Baham's state law arguments are not cognizable, and alternatively argues that Baham failed to cite

---

[323] St. R. Vol. 2 of 6, 7/16/18/12 Trial Tr. at 204-05.

[324] *See Greer v. Miller*, 483 U.S. at 766 n.8.

[325] Baham identifies this issue as DIRECT APPEAL "ISSUE NO:2."   ECF  No.1-2, at 8.

[326] LA. CODE CRIM. PROC. art. 793(A) provides:
> Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict.   He shall not be permitted to refer to notes or to have access to any written evidence.   Testimony shall not be repeated to the jury.   Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

[327] ECF  No.1-2, at 38-40.

any federal law that is contrary to the Louisiana Fourth Circuit's decision that allowing the

statement in the jury room was harmless error.[328]

Baham raised this same issue on direct appeal. The Louisiana Fourth Circuit, in rejecting

the claim, explained as follows:

> In the second assignment of error, defendant contends the trial court violated his right to a fair trial by allowing the jury to take the transcript of a witness's statement into the jury room during deliberations.

> During deliberations, the jury sent a note to the trial court requesting to see the statement of Mitchell Marks. The trial court agreed to send the transcript of the statement to the jury. Defendant objected. The trial court reasoned that under La.C.Cr.P. art. 793(A) it would have been permissible to replay the audio of Marks's statement to the jury during deliberation, but that it was easier to allow them to read the statement rather than deal with the technical difficulties of the recorder.

> Article 793(A) of the Louisiana Code of Criminal Procedure provides:

> Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

> The Louisiana Supreme Court has held that it is permissible for the jury to view videotapes properly admitted into evidence during deliberation. *State v. Brooks*, 2001–0785, p. 5 (La. 1/14/03), 838 So.2d 725, 729. The Court reasoned that videotapes of crimes as they happen are neither testimony nor written evidence. Id. at p. 3, 838 So.2d at 727. However, as this Court stated in *State v. Johnson*, 97–1519 (La.App. 4 Cir. 1/27/99) 726 So.2d 1126:

> Louisiana courts have reversed many convictions where the jury viewed a defendant's confession or written statement or reexamined verbal testimony during deliberations. *State v. Adams*, 550 So.2d 595 (La.1989) (jury reviewed defendant's confession to police); *State v. Perkins*, *supra* [423 So.2d 1103 (La.1982) ] (conviction for first degree murder reversed based on a *Brady* violation and because

---

[328] ECF No. 21, at 34-5.

during deliberations the jury examined the defendant's written statement); *State v. Buras*, 459 So.2d 756 (La. App. 4th Cir.1984) (aggravated kidnapping reversed because during deliberations the jury was given a transcript of recorded telephone calls between the kidnappers and the victim's family); *State v. Gracia*, 527 So.2d 488 (La. App. 5th Cir.1988) (jury reviewed the defendant's written statements). Gracia noted that prejudice was presumed, quoting *State v. Freetime*, 303 So.2d at 489.

*Johnson*, 97–1519, p. 13, 726 So.2d at 1133.

The evidence provided to the jury in *Johnson* consisted of medical records with written notations. This Court concluded that the trial court erred by allowing the jury access to the written evidence during deliberation. In light of the cases cited above and this Court's ruling in *Johnson*, we find that the trial court erred in allowing the jury to review the transcribed statement of Marks.

However, as this Court stated in *Johnson*, citing *State v. [Saul] Johnson*, 541 So.2d 818 (La.1989), such errors may not necessitate reversal. This Court stated:

Under La.C.Cr.P. art. 921, an appellate court shall not reverse a judgment because of any error "which does not affect substantial rights of the accused." Whether substantial rights of the accused were violated is determined under federal harmless error standards, i.e., whether the guilty verdict in this trial was surely unattributable to the error. *State v. [Silas] Johnson*, 94–1379, p. 14 (La.11/27/95), 664 So.2d 94, 100, citing *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). *[Silas] Johnson* distinguished between "trial errors," which may be reviewed for harmless error, and "structural errors," which defy analysis under the harmless error doctrine. *Johnson* at p. 14, 664 So.2d at 100, citing *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

The Court [in *Silas Johnson* ] stated that trial error is error which occurs during presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence. The Court further explained:

A structural error is one which affects the framework within which the trial proceeds.... Structural defects include the complete denial of counsel ...; adjudication by a biased judge....; exclusion of members of defendant's race from a grand jury ...; the right to self-representation at trial ...; the right to a public trial ...; and the right to a jury

verdict of guilt beyond a reasonable doubt.... *Id.*, at pp. 14–15, 664 So.2d at 101 [citations omitted].

We conclude based on these cases that, although Art. 793's prohibition is explicit, violation of that article does not mandate reversal. Rather, the erroneous presentation of written, documentary evidence to the jury during deliberations is trial error that can be quantitatively assessed in the context of other evidence, and therefore is subject to harmless error analysis.

*Johnson*, 97–1519, p. 16, 726 So.2d at 1134.

A review of the record indicates that the evidence of defendant's guilt was substantial. Detective Hurst's testimony was largely based on numerous angles of video camera footage that clearly depicted the crime. Lawrence was familiar with the parties involved and used this footage to identify them as well. The transcript of Marks' statement only supplemented Lawrence's identification of "Will" as the shooter to Detective Williams shortly after the crime. Derrick Lotz, defendant's friend, identified defendant as the shooter from a six-person photographic lineup within twenty-four hours of the crime. Marks' statement to Detective Darling was very specific and detailed, including the fact that defendant had a gun that was "[b]etween a 9[-] and a 40" caliber. This description matches the 40–caliber shell casings that a Friar Tucks employee found at the crime scene. Furthermore, Pelfrey's testimony was also detailed.

The evidence of defendant's guilt is extensive. Under the harmless error analysis, any harm that may have resulted from the jury's access to the transcript of Marks' statement was harmless, as it did not contribute to the verdict, and did not deprive defendant of a fair trial. This claim has no merit.[329]

The Louisiana Supreme Court denied relief without stated reasons.[330]

To the extent Baham argues that the state courts' denial of relief violated Louisiana law relating to evidence a jury can take into the jury room during deliberations, federal habeas review does not lie for errors of state law:[331] A federal court does "not sit as [a] 'super' state supreme

---

[329] *Baham*, 151 So. 3d at 704-706; St. R. Vol. 1 of 6, Louisiana Fourth Circuit Court of Appeal Opinion, 2013-KA-0058, at 10-13, October 1, 2014
[330] *Baham*, 170 So. 3d at 613; St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2014-KO-2176, 9/18/15.
[331] *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).

court in a habeas corpus proceeding to review errors under state law."[332]  As a result, Baham is not entitled to habeas relief even if the state trial court violated LA. CODE CRIM. PROC. art. 793.[333]

This court's analysis must instead focus on due process considerations, which requires that the court grant habeas relief only when the errors of the state court make the underlying proceeding fundamentally unfair.[334]  The Due Process Clause guarantees an accused the right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information.[335]  Baham fails to show that the Marks transcript, which was admitted into evidence, was extraneous information.  Furthermore, Baham cited no federal law in support of his argument that allowing the jury to use an admitted transcription of a witness' statement during deliberations violates the right to due process.  Absent Supreme Court precedent to control a legal issue raised by a habeas petitioner, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, rendering federal

---

[332] *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir.1994) (quotation omitted);.

[333] *McKinney v. Warden, Louisiana State Penitentiary*, No. 08–CV–1263, 2012 WL 1424506, at *8 (W.D.La. Mar. 14, 2012) ("The habeas statute allows a federal court to issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody and in violation of the Constitution or laws or treaties of the United States.  The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law.  Accordingly, any violation of La. C. Cr. P. art. 793 is not a basis for relief." (citation and quotation marks omitted)), *Order adopting report and recommendation*, 2012 WL 1429385 (W.D.La. Apr. 23, 2012)

[334] *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986).

[335] *Morgan v. Illinois*, 504 U.S. 719, 726-27, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992); *Patton v. Yount*, 467 U.S. 1025, 1037 n.12, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984).

habeas relief unwarranted.[336]  Indeed, several courts have rejected claims similar to that raised by

Baham in this petition on that basis.[337]

    Accordingly, the denial of relief on this issue by the state courts was not contrary to, or an

unreasonable application of, Supreme Court law.  Baham is not entitled to federal habeas corpus

relief as to this issue.

### RECOMMENDATION

    For the foregoing reasons, it is **RECOMMENDED** that Baham's petition for issuance of

a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH**

**PREJUDICE**.

    A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14) days

---

[336] *See Woods v. Donald*, 575 U.S. 312, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be "contrary to" any holding from this Court.") (citing *Lopez v. Smith*, 574 U.S. 1, 135 S. Ct. 1, 4, 190 L. Ed. 2d 1 (2014) (per curiam)); *Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (quotation omitted) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law."); *Pierre v. Vannoy*, 891 F.3d 224, 228 (5th Cir. 2018) ("Without a Supreme Court case holding that the State's unknowing use of false testimony violates the Due Process Clause, Pierre cannot show that the Louisiana Supreme Court unreasonably applied clearly established federal law as determined by the Supreme Court of the United States."); *Higginbotham v. Louisiana*, 817 F.3d 217 (5th Cir. 2016) (No violation of clearly established law where "the Supreme Court does not appear to have addressed this issue or a 'materially indistinguishable' set of facts"), *cert. denied*, ⸺ U.S. ⸺, 137 S. Ct. 506, 196 L. Ed. 2d 415 (2016); *Gomez v. Thaler*, 526 F. App'x 355, 359-60 (5th Cir. 2013) (citing *Van Patten*, 552 U.S. at 126, 128 S. Ct. 743) (When no Supreme Court precedent directly addressed the presented issue, it could not be said that the state court unreasonably applied clearly established federal law.).

[337] *Sharp v. Warden, Louisiana State Penitentiary*, Civ. No. 08-0989-P, 2011 WL 4551166, at *11 (W.D. La. Sept. 6, 2011) (rejecting petitioner's claim that the trial court's violation of Article 793 deprived him of due process where petitioner failed to cite to "any clearly established Supreme Court precedent that bars jurors in criminal trials from viewing written evidence, as Section 2254(d) requires for relief on such a claim."), *Order adopting report and recommendation*, 2011 WL 4550938 (W.D. La. Sept. 29, 2011); *Gray v. Tice*, Civ. No. 17-71 Erie, 2019 WL 824045, at *18 (W.D. Pa. Feb. 21, 2019) (petitioner failed to show that trial court's decision to permit jury, during its deliberation, to review three threatening letters petitioner sent to victims did not violate his right to due process where he failed to show the state court's determination was contrary to or an unreasonable application of due process precedent).

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[338]

New Orleans, Louisiana, this _____9th_____ day of October, 2020.


DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[338] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)).  *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).